# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**TERESSA JANETTE GALLEGOS, Individually and as**
**Personal Representative of the ESTATE OF**
**JOSEPH ORAN VAN WINKLE, Deceased;**
**and MARY ANN VAN WINKLE,**

      **Plaintiffs,**

**v.**                    **Cause No. _____**

**UNITED STATES OF AMERICA,**

      **Defendant.**

---

## PLAINTIFFS' ORIGINAL COMPLAINT FOR WRONGFUL
## DEATH DAMAGES DUE TO MEDICAL MALPRACTICE

---

      Plaintiffs, by and through their undersigned attorney, for their complaint against Defendant, would show the Court the following:

1.     Plaintiff Teressa Janette Gallegos is a resident of Santa Fe County, New Mexico. Mary Ann Van Winkle is a resident of Eddy County, New Mexico. Defendant United States of America is sued under the Federal Tort Claims Act, 28 U.S.C. 2671, et seq. and the Court has jurisdiction of the federal tort claims pursuant to 28 U.S.C. § 1331.

2.     Venue is proper in this Court because Plaintiffs reside in this District, and the treatment by the Veteran's Administration for which the United States is sued occurred in this District.

3.     Joseph Oran Van Winkle, a veteran who served in the United States Navy from June 1965 through November 1971 in Vietnam, sought treatment at the Raymond G. Murphy VA Medical Center on May 7, 2012, complaining of abdominal pain.  He was very weak, pale and had a dangerously low pressure upon his arrival at the emergency department.

4.      Dr. Maureen Wood, an internal medicine physician, assumed primary care for Mr. Van Winkle and admitted him to the medical intensive care unit with a diagnosis of septic shock.

5.      Blood cultures were obtained from Mr. Van Winkle in the emergency department, and on May 8, 2012, Dr. Wood should have been aware that the cultures resulted in two of two bottles positive for the infection of staph aureus.  She did not know, in part, because Dr. Chris Quintana, a fellow assigned to Dr. Woods and an agent and employee of the United States did not tell her, although he knew as set forth below.  At the time Dr. Wood should have known of the culture results Mr. Van Winkle was receiving the antibiotic Cefepime, pursuant to orders written for him by Dr. Wood.  Cefepime does not provide coverage for the infection which Mr. Van Winkle had as demonstrated by the blood cultures.  In fact, not one of the antibiotics included in the list of antimicrobial susceptibilities reported by the VA lab on May 8, 2012 were prescribed by Dr. Wood.

6.       Both the blood culture and the urine culture showed staphylococcus aureus as being the infecting agent present in Mr. Van Winkle's body.

7.      A pharmacist or representative of the pharmacy department employed by the United States VA Medical Center accompanied Dr. Wood on her rounds of patients every day. Such representative(s) should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate for his treatment because of the results of the culture, and that Mr. Van Winkle was therefore not .receiving the correct medication and should have so advised Dr. Wood.

8.      Dr. Chris Quintana, a fellow assigned to Dr. Wood at the VA Medical Center, was informed that both bottles cultured were positive for staph aureus.  Dr. Quintana failed to advise Dr. Wood of this.  Likewise, Dr. Quintana was a physician fellow working at the VA Medical Center with Dr. Wood and the other VA Medical Center doctors caring for Mr. Van Winkle was directly advised by

the laboratory that the culture showed a staph aureus infection.

9.      Dr. Quintana was an agent or employee of the United States at all pertinent times.

10.     On May 13, 2012,  Mr. Van Winkle was discharged from the VA Medical Center.

11.     Vancomycin was neither ordered nor administered for Mr. Van Winkle, according to the daily narrative of pharmacy records, although it would have been appropriately prescribed for him given the nature of his infection.

12.     Mr. Van Winkle did not get better. He was seen by Dr. Lisa Yearwood in Artesia, New Mexico, near his home, and was admitted to the Artesia General Hospital on or about June 5, 2012 with dehydration and continued infection.  Dr. Jorge Abalos was his treating physician in the hospital, and ordered Mr. Van Winkle returned to the VA Medical Center.

13.     Mr. Van Winkle was ultimately diagnosed with severe right-sided infectious endocarditis involving the tricuspid valve of his heart on June 12, 2012, following the administration of an echocardiogram at the VA Medical Center.  This is an infection caused by bacteria entering the bloodstream and settling in the heart lining, valve or vessel.  Vegetation grew on his heart as a result.

14.     At the VA Medical Center,  it was finally recognized that the course of oral antibiotics upon which Mr. Van Winkle had been placed was not adequate or appropriate to treat his infection and that he should have been given intravenous antibiotics for four to six weeks for his infection.  It was also the conclusion of the panel reviewing his records at the VA Medical Center that the vegetation on his heart was the result of his not having received appropriate antibiotic therapy.

15.     Mr. Van Winkle died on September 10, 2013.  His daughter, Teressa Janette Gallegos has been appointed as Personal Representative of his Estate and therefore brings this wrongful death action pursuant to the New Mexico Wrongful Death Act.  Mary Ann Van Winkle is the surviving

spouse of Joseph Oran Van Winkle.

16.     The United States is liable for the negligence of its agents as set forth in Paragraphs 5, 7, 8, and 9 above, for their failure to recognize the wrong medications being given and their failure to notify Dr. Wood of the positive culture and drugs to which the staph aureus was susceptible.

17.     As a direct and proximate result of the aforesaid negligence of Defendant, Plaintiffs have been harmed.  Plaintiff Joseph Van Winkle underwent significant and ongoing pain and suffering, physical impairment, disfigurement and incurred medical expenses and suffered mental anguish.  He also lost a chance of survival.  The negligence of Defendants' employees contributed to his death. Likewise, his wife Mary Ann Van Winkle, has suffered mental anguish and sues for loss of consortium with her husband.  The daughter of Joseph Van Winkle, Teressa Janette Gallegos, also sues for loss of consortium, society and guidance with her father,  and seeks all wrongful death damages recoverable by the Estate and beneficiaries.

18.     Notice of these claims were provided to the United States on December 2, 2013 and April 23, 2014.  The claim based on Dr. Quintana's negligencec was denied on October 21, 2014.

        WHEREFORE,  Plaintiffs pray that they have and recover judgment against Defendant for their actual damages; for costs of suit incurred herein; for pre and post-judgment interest as provided by law; and for such other and further relief as the Court may deem to be just and proper.

Respectfully submitted,

**THE PERRIN LAW FIRM**

1322 Paseo de Peralta, Lower Level
Santa Fe, New Mexico 87501
Telephone: (505) 989-8800
Facsimile: (214) 646-6117
Email: dougperrin@perrinlaw.org

*/s/Doug Perrin*
Doug Perrin

**ATTORNEY FOR PLAINTIFFS**